**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

v.                                              CASE NO. 3:04-cr-296-J-32TEM

RICKY MOSLEY
PHYLLIS S. MOSLEY

_____

## REPORT AND RECOMMENDATION[1]

### I. Background

Defendants Ricky Mosley and Phyllis Mosley seek to suppress under the Fourth Amendment the evidence obtained during a search of Defendants' premises located at 7730 Cypress Street, Keystone Heights, Florida.  As grounds for the motions to suppress, Defendants assert that the search warrant obtained was based on the results of a prior warrantless and illegal search of the same premises.  This case came before the Court on November 19, 2004 for a hearing on Defendant Phyllis S. Mosley's Motion to Suppress Evidence Seized as a Result of an Unlawful Search and Seizure (Doc. #21), Defendant Ricky Mosley's Motion to Suppress Evidence Seized as a Result of an Unlawful Search and Seizure (Doc. #20) and the United States' responses in opposition thereto (Docs. #27 & #28).   Oral  argument  and  witness  testimony  was  heard.   Subsequent  to  the  first suppression hearing, the Court determined a question existed as to whether the searched "premises" was actually Defendants' place of residence, and ordered the suppression

---

[1] Any party may file and serve specific, written objections hereto within TEN (10) DAYS after service of this Report and Recommendation.  Failure to do so shall bar the party from a *de novo* determination by a district judge of an issue covered herein and from attacking factual findings on appeal.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 45(a) & (e); Local Rules 6.02(a) and 4.20, United States District Court for the Middle District of Florida.

hearing be reopened to clarify this issue.  The re-opened suppression hearing took place on December 10, 2004.

## II. Findings of Fact

Detective Richard Seeley testified that he has been the marijuana eradication officer for the Clay County Sheriff's Office for three years and has investigated about 15 cases involving the indoor growing of marijuana.  On August 31, 2004, the officer replacing him in that position, Detective Randy Harris, received a tip that marijuana was being grown in a trailer at 7730 Cypress Street, Keystone Heights, Florida.

The two detectives went to the scene, verifying the existence of the address and trailer.  They decided to do a "knock and talk," an investigative procedure in which they would seek to have the occupant of the trailer open the door to answer questions and give consent to a search.  No one responded to a knock on the front door of the trailer. The officers could hear a humming noise and believed it to come from the ballast for florescent lights.  They then decided to walk to the backside of the trailer to see if there was a back door.  The two officers proceeded around opposite ends of the trailer.

Detective Seeley went around the south end and noticed a lot of condensation on windows.  He could not see in the windows, because of blinds, curtains or condensation. At the southwest corner of the trailer, he noticed a strong smell of marijuana, consistent in his experience with marijuana being grown in a confined area such as the trailer.   At the opposite end of the trailer,  Detective Harris noticed an electric meter and breaker box on a pole several feet from the trailer, and wires running from the box on the ground to the underside of the trailer, which was sitting on concrete blocks.   They also noticed three separate air-conditioning units were all running.

2

There were stairs to a back door.  The officers knocked on the back door and again received no answer.  They returned to the front and Detective Harris left to prepare an affidavit for a search warrant, while Detective Seeley remained in the area to keep the trailer under surveillance.   Detective Harris obtained the warrant from a state judge and along with other agents executed the warrant later in the day, finding marijuana plants growing under lights inside the trailer.

Defense counsel elicited on cross examination that the text of the search warrant affidavit was not consistent with the order of events to which Detective Seeley testified he and Detective Harris proceeded that morning.  Seeley, however, insisted his testimony was correct and that the affidavit was not intended to create a chronological sequence.

Defense counsel introduced six photographs taken from outside the trailer a few weeks after the search.  Detective Seeley testified these photos appeared to show the trailer and property in substantially the same condition as it was August 31.  Defense counsel also introduced a video (on disk) taken by the agents when they returned to execute the search warrant.  The first segment of the video showed the lot and the outside of the trailer prior to entry into the trailer during the search.  Counsel noted the photographs and the video showed the breaker box lid lifts from the bottom and the door was hanging down, but not locked.  The affidavit for the search warrant stated the box was open.

The trailer  is in a lightly populated residential neighborhood, with a wooded area between the trailer and neighboring residences on both sides and in back.   The photographs and video show a mailbox on a post near the gravel street, and a short section of perhaps 12 feet of a picket fence on the opposite side of the driveway.  The fence did not enclose the entire property, or even front of the property. There was another lower

3

wood fence further back from street, but it did not completely encompass the yard.  A chain link or wire fence separated the lot from the neighboring property in the back.   There was a dirt and gravel driveway leading in front of the trailer toward the side with the breaker box and a wooden porch leading to the front door.  There were no "no trespassing" signs.  The officers did not have to jump a fence or use a gate to enter the back yard.  The yard was not neatly maintained and there appeared to be rough footpaths to a neighboring property from the rear and one side of the trailer.  The ground around the trailer was simply dirt covered in leaves with sparse clumps of tall grass or weeds scattered throughout.

Although the suppression motions did not specifically refer to the trailer as the defendants' residence, at the initial hearing counsel used terms such as "residence in question" and the case law presented concerned residential curtilage.  After reviewing the video following the initial hearing, the Court questioned whether the trailer should be considered as the defendants' residence (there were no beds, couches or typical items of furniture pictured in the video, which appeared to show all rooms).  The Court ordered reargument on December 10, 2004, as to this and other possible issues and allowed the parties to present additional evidence if they wished.  The defendants indicated they would file a certified document identifying them as owners of the trailer (Doc. #40).   The prosecutor stated she would file a similar document as to the property at 7736 Cypress Street, which the defendants have listed as their residence on their bond (Doc. #39).  The documents identify Defendant Phyllis Mosley as the owner of lots 19 and 20 (7730 Cypress Street) and Defendant Ricky Mosley as the owner of lots 22 and 23 (7736 Cypress Street). The title to the trailer which defense counsel indicates sits on 7730 Cypress Street is in the names of both defendants.  Since they are husband and wife, the Court will consider the

4

interest in the property as jointly held.   There is no mention of lot 21, and the record is not clear that the two properties adjoin.

At the reopening of the hearing December 10, 2004,  the United States called Drug Enforcement Administration agent Thomas Flowers, who testified that on the day the search warrant was being executed Defendant Ricky  Mosley approached him outside of the searched trailer and during a conversation related that he and his wife rented the trailer to another couple.  Subsequently, Mosley gave Flowers a copy of a 1999 lease agreement for another address and stated the couple on that agreement rented the trailer at 7730 Cypress Street.  Agent Flowers was able to contact Kimberly Point (now McDonald) who was listed on the rental agreement and is now living in Illinois.  She denied renting that trailer. Ms. Point  said Richard Mueller, who was also shown on the rental agreement, had moved to Alaska in 2000 or thereafter, but he may have returned to somewhere in Florida.

Agent Flowers testified the trailer searched was about 75 yards from the trailer in which he believed the defendants reside and that the two properties are separated by a lightly wooded area.  Agent Flowers testified he did not go inside the trailer, but that agents who did told him there were no beds or food present, which indicated the trailer was not currently being used by anyone as a residence.

Defense counsel argues the officers illegally invaded the curtilage of the property, obtaining evidence used to later obtain the warrant.   The United States argues that the items viewed and smelled were in plain view, open to anyone to see or smell, and the officers had the right to approach the front and back doors.  During the second hearing, the United States also argued the defendants had no expectation of privacy in the searched premises, or at least in the exterior of said premises.

### III. Legal Analysis

The Fourth Amendment protects the "right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures..."  In *Katz v. United States*, 389 U.S. 347, 351 (1967), the Supreme Court noted that the amendment "protects people, not places."  The Court further noted that property interests do not "control the right of the Government to search and seize ...."  *Id. at 353, quoting Warden, Md. Penitentiary v. Hayden,* 387 U.S. 294, 304 (1967).  Trespass or physical intrusion is not a controlling factor as to whether an unreasonable search has occurred.  *Katz, supra,* 389 U.S. at 353.  A person asserting his Fourth Amendment rights were violated has the burden of establishing that his person, papers, house or effects were searched, and secondly that the search was unreasonable.  *United States v. Bachner*, 706 F. 2d 1121, 1125-26 (11th Cir.) *cert. denied*, 464 U.S. 896 (1983).

In *Rakas v. Illinois*, 439 U.S. 128 (1978) (a vehicle case), the Court dispensed with the concept of standing to challenge a search and seizure, holding that neither being a target of the police nor being legitimately on the premises provided a controlling right to contest a search.  The only question is whether the person seeking to challenge the search had a legitimate expectation of privacy in the area searched at the time the search was executed.  *Id.* at 148.  In cases involving real property, the Court has held no single factor determines whether an individual "legitimately may claim" Fourth Amendment protection in a location, rather courts are directed to look at such factors as the intent of the framers of the amendment, the uses to which an individual has put a location, and societal understanding that certain areas deserve the most "scrupulous protection from government invasion."  *Oliver v. United States*, 466 U.S. 170, 178 (1984).  In *Oliver,* the Court

6

reaffirmed that an individual may not "legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home." *Id.* The Court found no reason to provide such protection for open fields because they do not provide the setting for such "intimate activities" that the Fourth Amendment was intended to protect. *Id.* at 179. The Court further noted that the logic for the holding extends back to common law where the curtilage received protection because it was the area associated with the "'sanctity of a man's home and the privacies of life.'" *Oliver, supra,* 466 at 180, *quoting Boyd v. United States*, 116 U.S. 616, 630 (1886).

Determining the boundaries of the curtilage of a house has proven to be an area of law the Second Circuit has called "anything but clear." *United States v. Reilly,* 76 F. 3d 1271, 1273 (2d Cir. 1996). The touchstone has been the four-factor test enunciated in *United States v. Dunn*, 480 U.S. 294, 301-04 (1987). In *Dunn*, the Court found a barn 50 yards from a fence surrounding a ranch house was not within the curtilage of the residence. In doing so, the Court looked at four particular factors, although it indicated they were not exclusive: "the proximity of the area claimed to be curtilage to the homes, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation of people passing by." *Id.* at 301.

The officers in *Dunn* detected the strong odor of a chemical precursor of a controlled substance outside of the barn, then left to obtain a search warrant before entering the barn. The Court noted the officers possessed objective data indicating the barn was not used for "intimate activities of the home." *Dunn, supra,* 480 U.S. at 302.

The defendant in *Dunn* also argued he possessed an expectation of privacy in the

7

barn and its contents, independent of the curtilage because it was an essential part of his business.  The Court acknowledged the possibility that the barn could not be searched and its contents seized without a warrant, but noted that did not prevent the agents from standing in the open fields around the barn to gather evidence used to obtain a warrant. *Dunn, supra,* 480 U.S. at 303-04.

The issues thus presented to the Court in the instant case are (1) whether the defendants had a reasonable expectation of privacy in the trailer at 7730 Cypress Street, and (2) if so, did  the officers' "knock and talk" attempt at the front and/or back doors violate that expectation of privacy.

It is clear from the evidence presented that the trailer at 7730 Cypress Street was not being used as the defendants' residence.   The videotape shows that the trailer was filled with plants and equipment for growing plants, with little or no furniture and no bed inside.   The defendants' motions to suppress refer to the trailer as the "premises" or property, and do not use the term residence.[2]

The property records filed with the Court show the defendants own the property at 7730 Cypress Street, as well as  property at 7736 Cypress Street.  If the subject property was rented at the time of the search, the defendants would not, under *Rakas, supra,* be entitled to an expectation of privacy in the outside of the property.[3]   The renters would be in position to allow whomever they choose to approach and enter the trailer.  *Cf. United States v. Ford*, 34 F. 3d 992, 995 (11th Cir. 1994) (finding that defendant as lessee had

---

[2]The United States did not raise this issue at the first hearing.

[3]At best, the defendants might have some expectation of privacy in the trailer itself as owners if the trailer were seized.  *See Dunn, supra*, 480 U.S. at 303-04.

standing to object to search by citing to *United States v. Garcia*, 741 F.2d 363, 366 (11th Cir. 1984) for the proposition that owners, lessees and occupants demonstrating significant and current interest in the searched premises have an expectation of privacy).  If the trailer was not rented, then the question remains how to consider it.  The Court believes the closest analogy would be an out-building under the open fields test.

The property in question had a separate address and, apparently, a separate electrical meter from the next-door residence of the defendants.  In deciding if the trailer was within the curtilage of the defendants' residence at 7736 Cypress Street, the Court applied the four-factor test of *Dunn* and has concluded the property at 7730 Cypress Street is not within the curtilage of the defendants' residence.   The two trailers are about 75 feet away from each other, according to Agent Flowers  testimony.   The subject property is not within an enclosure of the 7736 Cypress Street address, indeed, there were no physical indications that would connect the two properties.  There is a lightly wooded area between the two properties.  Nothing in the appearance, nature, or any apparent use, of the subject property would cause belief that the trailer and lot are within another property's curtilage. The officers reasonably believed when they first approached the trailer that someone lived there.  However, there were no particular indications of how the property was being used, other than its use apparently required air-conditioning, which is not unusual in Florida.  The driveway path did not appear to be heavily used.  The yard, which consisted mainly of sparse dirt and grass clumps, was not manicured or kept neatly.  There were one or two dogs on the property at some point during the execution of the search warrant, but it is not clear whether they were attached to the property and they did not appear in the videotape to be guard dogs.  There were no steps taken to keep the area around the trailer from

9

observation by people passing by.  There is no fence enclosing the area and the electrical meter at a rear side of the trailer has open and easy access.[4]  Once the officers smelled the marijuana odor, they had some objective indication that the trailer was not being used for the intimate activities of the home.  *See Dunn, supra,* 480 U.S. at 302.

In *United States v. Hatch,* 931 F. 2d 1478 (11th Cir.), *cert. denied*, 502 U.S. 883 (1991), the court examined similar factors in determining that a barn was not within the curtilage of a house and taxidermy building.  The court noted there is no "bright line" or mechanical determination for curtilage.  Although fences don't have to completely surround an area, the central question is  whether the area in question is "so intimately tied to the house itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection."  *Hatch, supra,* 931 F.2d at 1481-82, *quoting Dunn, supra,* 480 U.S. at 301.  In *Hatch,* the court found no use of the area in question supported a protectible property interest.

Thus, the Court finds there is no basis to consider the 7730 Cypress Street property as part of the curtilage of the defendants' residence at 7736 Cypress Street.

Defendants also argue the property could be considered a business with its own curtilage.   There is authority that a business curtilage exists.  *See Dow Chemical Co. v. United States,* 476 U.S. 227 (1986); *United States v. Hall*, 47 F.3d 1091 (11th Cir.) *cert. denied*, 516 U.S. 816 (1995);  *United States v. Seidel*, 794 F. Supp. 1098 (S.D. Fla. 1992).

---

[4]One court has found that the fact a meter reader would have had access to a back yard does not imply that the public at large would. *United States v. Diehl*, 276 F. 3d 32, 39 (1st Cir.), *cert. denied,* 537 U.S. 834 (2002).  Another circuit has held that walkways not enclosed by a gate or fence are not within the curtilage.  *United States v. French*, 291 F. 3d 945, 953 (7th Cir. 2002).

However, there was no indication marked on the subject property that a business existed there.  Moreover, business owners have a lessened expectation of privacy in the non-enclosed areas of a business where visitors and/or customers are to be expected.  In *Hall*, the court held that a commercial proprietor would have to take affirmative steps to exclude the public before an expectation of privacy would exist.  *Hall, supra*, 47 F. 3d at 1047.  That court upheld an entry by police to obtain a garbage bag from a dumpster.  *Id.*  In *Seidel*, however, the grounds of a small commercial nursery were fully enclosed with no trespassing signs posted on the perimeter of the property, and a sign posted on the only gate, kept locked, saying "Beep Horn and Wait."  *Seidel, supra*, 794 F. Supp. at 1099. Although the government argued the area in which marijuana plants were found was open fields, the *Seidel* court, applying the *Dunn* factors, disagreed and found the area was curtilage in which an expectation of privacy was reasonable.  *Id.* at 1103-04.  Accordingly, the Court finds the trailer in this case would not qualify as business curtilage as no affirmative steps to exclude public view were taken.

Defendants also argue that as property owners they were entitled to an expectation of privacy in the trailer.   As was stated in *Dunn, supra,* 402 U.S. 303-04, a subjective expectation of privacy within a building would not provide a legitimate expectation of privacy in the open fields around the building.   It was in the area outside the trailer that the officers found the probable cause to obtain the search warrant used to search the trailer itself.

Even if the defendants did possess an expectation of privacy in the grounds surrounding the 7730 Cypress Street trailer, the Court would not find a violation of their Fourth Amendment rights on the facts of this case for the reasons discussed hereafter.

The Eleventh Circuit has held that reasonable suspicion of criminal activity can

11

justify a law enforcement officer to approach a house to question the occupants.   *United States v. Tobin*, 923 F. 2d 1506, 1511-12 (11th Cir.), *cert. denied*, 502 U.S. 907 (1991). "Reasonable suspicion cannot justify the warrantless search of a house, but it can justify the agents' approaching the house to question the occupants." *Tobin, supra*, 923 F. 2d at 1511 (internal citations omitted).  As stated in *Davis v. United States*, 327 F. 2d 301, 303 (9th Cir. 1964),  "[a]bsent express orders from the person in possession against any possible trespass, there is no rule of private or public conduct which makes it illegal per se, or a condemned invasion of the person's right of privacy, for anyone openly and peaceably, at high noon, to walk up the steps and knock on the front door of any man's 'castle' with the honest intent of asking questions of the occupant thereof--whether the questioner be a pollster, a salesman, or an officer of the law." *See also, United States v. Hall*, 152 F. 3d 930, 1998 WL 382722 (9th  Cir. Jun. 9, 1998)[5] ("knock and talk" approach to the front and back doors of a trailer is permissible even with a "no trespassing" sign).

In *United States v. Knight,* 451 F. 2d 275, 278 (5th Cir. 1971) *cert. denied*, 405 U.S. 965 (1972),[6] the court held that when performance of his duty requires an officer to enter upon private property, his conduct, otherwise a trespass, is justifiable.   The court added that a trespass by itself does not constitute an illegal search.  *Id.*  Thus, the Court finds it was appropriate in the instant case for the officers, who had received information less than probable cause, to enter the property to attempt to talk to the occupants.

_____

[5]This opinion was not published and may not be cited to or by the courts of the 9th Circuit except as provided by 9th Cir. R. 36-3.

[6]In *Bonner v. City of Prichard,* 661 F. 2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

When no one answered the front door, the officers proceeded to walk around the trailer to a back door.  In doing so Detective Seeley came upon the strong odor of marijuana that created probable cause for a search warrant.  The detection of an odor by an officer, who recognizes it based on his law enforcement experience to be the odor of marijuana, creates probable cause.  *United States v. Lueck,* 678 F.2d 895, 903 (11th Cir.) *reh'g denied*, 695 F. 2d 566 (11th Cir. 1982).

The issue here thus becomes whether the officers walking around an apparent residential trailer to the back door violates a legitimate privacy interest of the owners.   As noted by the Supreme Court in *Oliver v. United States*, *supra*, 466 U.S. at 182-83, "[t]he test of legitimacy is not whether the individual chooses to conceal assertedly 'private' activity, but whether the government's intrusion infringes upon the personal and societal values protected by the [Fourth] Amendment."   In *Oliver*, the Court found that police intrusion in the open field area of a farm did not violate the Fourth Amendment, even though it may have been a trespass at common law.  *Id.*  A person has an expectation of privacy protected by the Fourth Amendment only if he has a subjective expectation of privacy <u>and</u> if society is prepared to recognize that expectation as objectively reasonable. *United States v. Miravalles*, 280 F. 3d 1328, 1331 (11th Cir. 2002) (emphasis added; internal citations omitted).

Cases in which courts have upheld officers' entry in the back-yard area include *United States v. Knight*, *supra*, 451 F. 2d 275 (5th Cir. 1972) (officers entered driveway toward garage to make inquiry); *United States v. French*, *supra*, 291 F. 3d 945 (7th Cir. 2002) (walkway that was not enclosed was used); *United States v. Raines*, 243 F. 3d 419 (8th Cir.), *cert. denied*, 532 U.S. 1073 (2001) (process server walking through opening in

13

makeshift fence of debris at rear of house); *United States v. Hammett*, 236 F. 3d 1054 (9th Cir.) *cert. denied*, 534 U.S. 866 (2001) (officers circled house while looking for occupant to ask questions, noticed marijuana inside); *United States v. Alvarez,* 147 F. 3d 354 (4th Cir. 1998) (officers received complaint of loud party, went to backyard based on sign in front stating "party in back"); *United States v. Daoust*, 916 F. 2d 757 (1st Cir. 1990) (officers attempting to question occupant, knocked on front door, then walked up an un-landscaped slope to back yard, noticed gun though window in back); *United States v. Anderson*, 552 F. 2d 1296 (8th Cir. 1977) (agents seeking to question occupant walked to back door when no one answered front and noticed contraband through window); *United States v. Bradshaw*, 490 F. 2d 1097 (4th Cir.) *cert. denied,* 419 U.S. 895 (1974) (agents went toward backdoor when no one answered front).  The common thread in these cases is that the law enforcement official entered the curtilage to make an inquiry, rather than specifically to make  a seizure or arrest.

Other courts have found back-yard intrusions violated the residents' expectation of privacy.   *Fixel v. Wainwright*, 492 F. 2d 480 (5th Cir. 1974)[7] (agent entered backyard to retrieve item after arrest inside apartment); *United States v. Diehl*, *supra*, 276 F. 3d 32 (1st Cir. 2002) (agents entered 17-acre parcel at 3 a.m. with thermal imaging device and looked

---

[7]The Court recognizes that in *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.   However, the Court does not find *Fixel* to be controlling on the facts of this case because the yard in *Fixel* unquestionably was attached to the defendant's residence, it was fenced, and the agent entered solely for the purpose of seizing an item, thus had no legitimate purpose for being there without a warrant.

around camp residence area, then left to get warrant);[8] *Daughenbaugh v. City of Tiffin,* 150 F. 3d 594 (6th Cir. 1998) (officers looking for stolen goods went to back door when no one answered front, then noticed stolen items in garage); *United States v. Jenkins,* 124 F. 3d 768 (6th Cir. 1997) (officers who had seen marijuana plants from air, entered both open fields and backyard); *United States v. Reilly*, *supra*, 76 F. 3d 1271 (2d Cir. 1996) (agents walked around defendant's 10-acre farm and looked around cottage 375 feet from main house, smelling marijuana, then left to get warrant).

Although the split in opinion between the cases finding an invasion of a reasonable expectation of privacy and those that did not cannot be totally reconciled, one key factor has been the purpose of the agents entry into the back yard or property.   Where the purpose was clearly to seize evidence, courts have been more likely to find it a violation of residents expectation of privacy.   *See, e.g., Fixel, supra,* 492 F. 2d at 483-84 (yard was fenced and officer entered solely to seize item); *United States v. Davis*, 423 F. 2d 974 (5th Cir.) *cert. denied*, 400 U.S. 836 (1970) (agent returned to a yard within curtilage of residence 3 ½ hours after arrest and at night-time, unannounced, solely to look for firearm);

---

[8]Although the court in *Diehl* found there was a violation of the curtilage in the officers surreptitious prowling of a wooded area near the camp house, the court declined to suppress the evidence obtained by a subsequent search warrant, finding that the "good faith" exception to the exclusionary rule established in *United States v. Leon,* 468 U.S. 897 (1984), should apply.  *Diehl, supra*, 276 F.3d at 41-44.  The court found the search warrant affidavit adequately described what the officers had done and there may have been an arguable basis for the officers' perception that they were not intruding on the curtilage. *Id.  See also*, *United States v. Curtis*, 2003 WL 21949131 (E.D. Tenn. Jun. 27, 2003).  However, other courts have rejected a "good faith" claim in warrant-after-curtilage-intrusion situations.  See, e.g*., United States v. Reilly,*76 F.3d 1271, 1280-1283 (2d Cir. 1996) and *United States v. Schroeder*, 129 F.3d 439, 442-443 (8th Cir. 1997).  In the instant case, the Court asked for argument on the possibility of a good faith exception, but in view of its findings finds it unnecessary to rule on that basis.  The affidavit in this case did not mention going to the back door.  Although the Court does not find the agents conduct to be unreasonable, the law on good faith in this context may be less clear than that on what is curtilage.

*Reilly, supra,* 76 F. 3d at 1279 (officer took extensive walk around property solely to gather evidence for warrant); *Diehl, supra,* 276 F. 3d at 41 (3 a.m. snoop to get evidence).  Where the purpose has been to make contact with the resident, courts have been more likely to find no unreasonable violation of rights, even if it is trespass.

Defendants argue the officers were at 7730 Cypress Street to conduct a search and their actions constituted such.  The government argues the officers  were there for a "knock and talk" and obtained a warrant promptly after confirming of their suspicions while approaching the front and back doors.   Although the Court can safely surmise the officers were not disappointed with what they learned while walking to the back door, their subjective intent is not the determining factor.  The proper focus in a Fourth Amendment inquiry is objective conduct, not the subjective intent of the involved police officer(s).  *See Whren v. United States*, 517 U.S. 806 (1990).

The officers here knocked at both doors, supporting their claim of a "knock and talk" purpose.   The strong smell of the marijuana by an experienced agent while walking to the back door provided sufficient probable cause for the warrant.  Although the defendants argue the agents conducted a search by listening to the ballast noise and by observing that the air-conditioners were running,  the windows were covered with condensation, and the wiring ran from the house to the fuse box, the noted actions are all simple observations that required no active search by the officers.  "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence."  *Harris v. United States*, *supra*, 390 U.S. at 236.

The only troubling issue is the declaration in the search warrant affidavit that the

16

breaker box was "open."  In the video taken at the time the warrant was executed, the fuse

box lid is hanging down, even though not locked or fully closed.  If it had been in that

position on the morning during the initial walk to the rear of the trailer, the officer would

have had to raise the door to observe inside.  The Court recognizes the position of the lid

might have changed from the initial look, or that the officer used the term "open" to mean

unlocked.  Regardless, although such action could constitute a search, the importance of

the observation of fuses inside, if any, is negligible.  The odor of marijuana, by itself,

provided probable cause for the warrant's issuance.  Any statements about the fuse box

could be stricken from the affidavit without eliminating the probable cause.

Thus, for the reasons stated above, the Court finds the defendants lacked an

expectation of privacy in the grounds surrounding 7730 Cypress Street. The Court

recommends the motions to suppress (Docs. #20 & #21) be **DENIED**.

**DONE AND ENTERED** at Jacksonville, Florida this <u>22nd</u> day of December, 2004.

*Thomas E. Morris*

**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to:
U.S. Atty.  (Moody)
Lester Makofka

Hon. Timothy J. Corrigan