**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

v.                                                          CASE NO. 3:04-cr-296-J-32TEM

RICKY MOSLEY
PHYLLIS S. MOSLEY

_____

## SUPPLEMENTAL REPORT AND RECOMMENDATION[1]

This Report and Recommendation is written as a supplement to the Report and

Recommendation issued December 22, 2004 (Doc. #45) concerning Defendants' motions

to suppress the evidence obtained pursuant to the issuance and execution of a search

warrant on a trailer owned by the Defendants.[2]

Defendants filed an objection to the original Report, arguing the testifying detective's

account of the sequence of events appeared to differ from the search warrant affidavit

(Doc. #46).  After the United States responded (Doc. #48), the District Court ordered both

sides to file supplemental responses in support of their respective positions on the issue

raised in the objections (Doc. #59).  After receiving the additional memoranda (Docs. #60,

---

[1]Any party may file and serve specific, written objections hereto within TEN (10)
DAYS after service of this Report and Recommendation.  Failure to do so shall bar the
party from a *de novo* determination by a district judge of an issue covered herein and
from attacking factual findings on appeal.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P.
45(a) & (e); Local Rules 6.02(a) and 4.20, United States District Court for the Middle
District of Florida.

[2]Prior to making its original Report and Recommendation, the Court held two
suppression hearings (Docs. #32 & #37), as well as considered the written argument of
counsel (Docs. #20, #21, #27 & #28).  That initial Report and Recommendation (Doc.
#45) is hereby incorporated by reference.

#61 & #67), the District Court then referred the matter for this Supplemental Report and

Recommendation.

The Court held another hearing March 15, 2005,  at which Detective R.J. Harris, the

affiant for the search warrant in issue, testified (Doc. #70).  Each side was allowed to file

a post-hearing memorandum.  (*See* Docs. #76, #77, #78 & #81.)[3]

Accordingly, the Court notes the parties have been afforded numerous opportunities

to present authority for their respective positions.

### *Issues*

The issue initially raised by the Defendants after the first hearing was whether the

testimony of Detective Richard Seeley seemingly contradicted the description of events

contained in the search warrant affidavit sworn by Detective Harris.  The District Court

asked defense counsel to comment on why they had not called Detective Harris to testify

and to state the precise legal doctrine on which they were relying (Doc. #59).  Defendants

stated they were relying on the affidavit in lieu of Harris' testimony and the principle that

probable cause must be within the four corners of the affidavit (Doc. #60).  The United

States stated Detective Harris was on vacation at the time of the first hearing (Doc. #67).

During the third hearing, Defendants raised an issue as to whether initialed changes

to the search warrant and affidavit were properly made.  Defendants' post-hearing briefs

---

[3]The Court subsequently also ordered the United States to file a certified copy of
the search warrant affidavit and the search warrant (Doc. #80) because the copies
previously in the file (Doc. #21, Exhibits A and B) and Defendants' Exhibit 1 introduced
at the second suppression hearing (Doc. # 71) differed slightly, one of them possibly
being an attorney's work copy bearing markings.  The certified copy was filed on April 6,
2005 (Doc. #82).

(Docs. #76, #78 & #81) address this issue.  The United States has replied that even if the changes initialed by Judge Wilkes were not proper, the good faith exception should apply based on the detectives' reliance on the judicially issued search warrant (Doc. #77).

Defendants also raised an issue at oral argument as to whether Detective Harris' testimony should cause reconsideration of the Court's analysis under *United States v. Dunn*, 480 U.S. 294 (1987).

### *Factual findings*

The United States called Detective Harris at the second hearing.  He testified that after another detective received an informant's tip that marijuana was being grown  in a trailer, he went with Detective Seeley to the trailer and they knocked at the front door in an attempt to talk with the residents.  After no one answered repeated knocks, he decided to walk to the back door and Detective Seeley walked around the opposite side of the trailer. Dogs were leashed in the yard outside of the trailer.  In walking to the rear of the trailer, Harris noticed that two air conditioners were running at the same time, while Seeley had noticed a third running air conditioner unit.  Harris also noticed the pole containing the electrical meter had additional wires leading to the trailer.  Harris found the extra wiring to be suspicious, based on his experience with other marijuana grow operations in the past where he had seen a meter box had been "beefed up" to handle the additional lights needed for indoor growing.  Detective Harris said the meter box cover was open about three inches.  He said he noticed windows were covered with either blinds or curtains, except that one windowed appeared covered with black plastic.  Detective Harris stated he didn't smell marijuana but that Seeley told him he had smelled marijuana at the end of the trailer.  Harris stated he had sinus problems and a stuffy nose on the day of the search.

Detective Harris further testified he did not draft the affidavit, but related his observations and those of Detective Seeley to an assistant state attorney.  Harris stated he did not tell the prosecutor to list the events in the affidavit in any certain order.  When he read the prepared affidavit, he recognized the facts as things he knew.  He had no intent that the affidavit express events in chronological order.  Circuit Judge William A. Wilkes signed the warrant in Detective Harris' presence.

On cross-examination, defense counsel questioned Harris about inked changes to the typed affidavit that changed the county from Duval, as typed, to Clay, in handwriting. Harris testified that when he took the signed warrant to the site to be searched his supervisor who noticed "Duval County" was incorrectly shown in the affidavit and required him to take the warrant and affidavit back to the state attorney's office for correction.  He believes the assistant state attorney took the documents back to the Circuit Judge William A. Wilkes who initialed the changes, but Harris did not recall if he (Harris) was present. Harris stated he did not tell the judge anything not contained within the affidavit.  Harris did not sign the affidavit a second time.  The location to be searched was in Keystone Heights, Florida, which is in Clay County.  Harris stated he was not aware of any Keystone Heights in Duval County.

### *Analysis*

1. *Conflict between affidavit and testimony?*

The initial thrust of Defendants' objections was that the affidavit for the search warrant, if read as a chronology, would have indicated that the officers went to the back of the trailer first, negating the United States argument that the approach to the house was

4

for a "knock and talk." [4]  (Doc. #46 at 2-3; Doc. #60 at 2.)   The District Court asked the Defendants for the "precise legal doctrine" underlying their attack on the differences between the affidavit and Detective Seeley's testimony.  (*See* Doc. # 59, Court Order.) Their reply seems to rely on the general premise that the judge signing a search warrant must rely on the information contained within the "four corners" of the affidavit.  However, Defendants have cited no authority that where the information is not described in the affidavit as being in chronological order, it must be considered to be listed in chronological order.

Detective Harris testified that the affidavit was prepared by an assistant state attorney after he relayed his observations and those of Detective Seeley to the attorney, and that he read and believed it correct.  He also stated he had no intent the affidavit be read as listing the observations in the chronological order in which they were made. Nothing in the affidavit describes the events as occurring in a specific order.  Indeed, the fact that the information received  from a confidential informant, reported as occurring within the last ten (10) days, is listed in the last sentence of the descriptive paragraph would tend to imply the affidavit was not stated in chronological order.

---

[4]Defendants also question whether the breaker box was open to a position in which the officers could have looked inside.  Detective Harris testified at the third hearing that it was open three inches (*see* Doc. #74, Transcript at 12).  The fact that photographs or video taken later after the box had been examined by technicians (*id.* at 45) shows it closed is insufficient to prove any statement in the affidavit was false.  As to any discrepancy concerning blinds or curtains or condensation on the windows, Detective Harris testified he could not see in the windows, although he could not recall specifically what covered each particular window.  Such minor discrepancies do not cast sufficient doubt on credibility

The law is clear that there is a preference for searches occurring under a warrant as opposed to searches without a warrant. *United States v. Ventresca*, 380 U.S. 102, 106-107 (1965).  In fact the Supreme Court has stated that "in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall." *United States v. Leon*, 468 U.S. 897, 914 (1984) (internal quotations omitted).

As a result of this preference, the Court held in *Ventresca, supra*, 380 U.S. at 108, that:

> " ... affidavits for search warrants ... must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion.  They are normally drafted by nonlawyers in the midst and haste of a criminal investigation.  Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in the area.  A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting."

The Court continued on to state that where the underlying circumstances are detailed and a magistrate has found probable cause, "the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner."  *Id.* at 109.

In the instant case, attempting to interpret the affidavit being stated in chronological order, would be akin to requiring affidavits follow chronological form, which would be a clear violation of the Supreme Court's preference and guidance concerning warrants.

2. *Were changes to search warrant properly made?*

The Fourth Amendment to the Constitution states that the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall be violated, and no Warrants shall issue, but upon probable cause,

supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."

Detective Harris appeared before Judge Wilkes and swore to an affidavit containing probable cause and describing the premises to be searched and things to be seized. However, at the time Harris did so, the affidavit and warrant listed the residence as being in Keystone Heights in Duval County, rather than Clay County.  Detective Harris, or his supervisor, noticed the error prior to the execution of the warrant.  Defendants argue that as a Clay County officer, Detective Harris would have had no authority to execute a Duval County search.  Whether such argument is correct is irrelevant since Harris did not conduct the search in Duval County.

Judge Wilkes is a circuit judge in the Fourth Judicial Circuit in Florida, which encompasses Duval, Clay and St. John's County, and as such could have issued a warrant executable in any of those counties.  *See* FLA. STAT. ch. 26.021(4) (2004).

After Detective Harris took the warrant back to the state attorney's office, a prosecutor went back to Judge Wilkes to correct the clerical error concerning the county. Detective Harris does not recall if he accompanied the prosecutor, but it is clear he did not again sign the affidavit he had signed previously.  Judge Wilkes initialed changes he apparently made in the warrant and also the affidavit.  The Court notes "Duval County" remains uncorrected at one place in the affidavit, near the beginning of the document.

Defendant argues that the correction procedure has two defects: First, the corrected warrant was not supported by oath, and, second, the judge lost his "neutral and detached" position by altering the documents without a new oath.  (Doc. #76 at  4.)

There is precedent in this circuit that the original warrant, even though it erroneously

listed the wrong county, may not have been fatally deficient.  In *United States v. Avarello*, 592 F.2d 1339 (5th Cir. 1979),[5] a search warrant incorrectly described in its body the premises as being in Dallas, Texas rather than Fort Worth.  The court found that the description in the caption was correct, however, and that the street address was correctly listed and a detailed description of the property was given, negating the likelihood of the wrong location being searched.   The *Avarello* court held that the "test in this area is that the search warrant description must be sufficient to enable the executing officer to locate and identify the place to be searched with reasonable effort and without reasonable probability that another premises might mistakenly be searched."   *Id.* at 1344.   An erroneous description of the premises to be searched is not necessarily fatal to the validity of a warrant.   *United States v. Weinstein*, 762 F.2d 1522, 1532 (11th Cir. 1985).

In the instant case, the detailed description of the property and directions to arrive at the property, and its identification as being in "Keystone Heights, Florida 32656" similarly negated any probability of an incorrect location being searched.

By initialing changes to the county, the judge did not alter any of the substantive material relating to probable cause.  The probable cause was sworn to by the detective and not changed.  A judge has the authority to modify warrants presented to him.  *See, e.g.,* Rule 41(e)(3)©), Fed. R. Crim. P.  Further, a court may take judicial notice of a fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort

---

[5]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).

"Geography has long been peculiarly susceptible to judicial notice for the obvious reason that geographic locations are facts which are not generally controversial and thus it is within the general definition contained in Fed. R. Evid. 201(b). . . . "  *United States v. Piggie*, 622 F.2d 486, 488 (10th Cir. 1980).  *See also, United States v. Bello*, 194 F.3d 18, 23 (1st Cir. 1999); *United States v. Blunt*, 558 F.2d 1245, 1247 (6th Cir. 1977).  Although those cases involved trials, judicial notice may be taken at any stage of a proceeding.  Fed. R. Evid. 201(f); *Government of Canal Zone v. Burjan*, 596 F.2d 690, 694 (5th Cir. 1979)(judicial notice taken by appellate court).

Proof of venue as a jurisdictional fact has consistently been held as a proper subject of judicial notice.  *Canal Zone, supra,* 596 F.2d at 693; *United States v. Hughes,* 542 F.2d 246 (5th Cir. 1976); *United States v. Anderson*, 528 F.2d 590 (5th Cir.), cert. denied, 429 U.S. 837 (1976).

Thus, the Court finds Judge Wilkes could properly change the warrant once the clerical mistake concerning the county was realized and called to his attention prior to  the warrant's execution.  Although, it is arguable that the judge should have had the detective initial the changes in the affidavit, rather than doing it himself, any defect in that procedure does not affect the probable cause determination.  Even where a commissioner (the predecessors of magistrate judges) relied upon unsworn as well as sworn affidavits to support probable cause, the validity of the warrant has been upheld.  *Clay v. United States*, 246 F.2d 298, 304 (5th Cir. 1957).

Defendants also argue Judge Wilkes did not act as a "neutral and detached magistrate" in altering the affidavit.  As stated, *supra*, the preference for searches under warrants is based on a neutral and detached magistrate serving as a safeguard against improper searches based on the hurried judgment of a law enforcement officer.[6]  Judge Wilkes' changes did not even approach the level of conduct required to demonstrate an abandonment of neutrality.  See, e.g.,  *Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319 (1979), where the Court held a local town justice did not manifest neutrality and detachment when he accompanied officers to a store to search for pornographic items and the warrant he signed did not describe the items to be seized with any specificity.

The Court is hard pressed to see a valid comparison between Judge Wilkes' actions and those of the local town justice in *Lo-Ji Sales.*  The Eleventh Circuit held in *United States v. Martin*, 297 F.3d 1308, 1317-18 (11th Cir. 2002) that a judge did not "wholly abandon" his judicial role if he received some oral testimony in addition to the facts written in the affidavit, nor if the facts he found sufficient to support probable cause are later found deficient by the appellate court.  In the instant case, the sworn facts contain clear probable cause and, even if the information as to the clerical error in the listing of the county is unsworn, it would not show that Judge Wilkes abandoned his judicial role or his neutrality and detachment.

3.  *Did Detective Harris act in good faith?*

Even if Judge Wilkes' act of initialing changes without  re-swearing the affiant was error, the Court does not agree with Defendants that on these facts the initials negated the

---

[6]In the instant case, the detectives, once they realized the error, held back until they could get the warrant changed, so did not act in hurried fashion.

possibility of applying the good faith exception to the exclusionary rule.

A police officer is not "required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested."   *Massachusetts v. Sheppard,* 468 U.S. 981, 989-90 (1984). In *Sheppard,* the judge advised the detective that he would make necessary changes to an improper warrant form that the officer had brought, which the judge did in the detective's presence.   *Id.* at 989.   The detective in *Sheppard* then reasonably concluded that the warrant authorized the requested search for items listed in the affidavit, when in fact it did not.   In *Sheppard*, as in the instant case, the warrant was not so facially deficient that an officer could not reasonably have presumed it to be valid.   *See also, United States v. Leon,* 468 U.S. 897 (1984).

Even reliance upon a warrant that was based entirely on an unsworn, unsigned affidavit has been found to qualify for the good faith exception.  *United States v. Hessman*, 369 F.3d 1016 (8th Cir. 2004).

The Eleventh Circuit in *Martin, supra*, 297 F.3d at 315-316, held that an officer could rely in good faith on a warrant issued upon an affidavit that had deficiencies, but also had sufficient indicia of probable cause to enable a reasonable officer to believe the warrant was valid.  In this case, Detective Harris had sufficient information to believe the warrant was properly corrected through the procedure used to take it back to the judge who made the initialed changes.  The Court finds Detective Harris acted in good faith reliance upon the search warrant signed by Judge Wilkes.

4.   *Does the detectives' original belief affect the curtilage determination?*

During argument at the third suppression hearing, Defendants argued that the officers' belief that the trailer was a residence should negate the third factor in the analysis of *Dunn, supra*, 480 U.S. at 302.  Detective Harris testified that he approached the house to attempt to talk to the residents, believing the trailer to be a residence.  He also testified, however, that based on his experience in investigating indoor marijuana grow cases people sometime leave "identifiers" to create an appearance of a personal residence when, in fact, no one lives at the specified location. (*See* Doc. #74, Transcript, at 44.)

As discussed extensively in the original Report and Recommendation, the Court in *Dunn* considered four factors in deciding whether an area was within the curtilage of a home: (1) the proximity to the home, (2) whether it is within an enclosed area surrounding the home, (3) the nature of uses to which the area is put, and (4) the steps taken by the resident to protect the area from observation.  *See Dunn, supra*, 480 U.S. at 301.  In discussing the third factor, the Court noted the law enforcement officers had objective data through aerial photographs that the suspect barn was not being used for the intimate activities of the home.  *Id.* at 302.  The Court also noted, however, that the factors were not "a finely tuned formula" providing a correct answer in every case, but merely tools to be used to the extent they bear on relevant considerations in a case.  *Id.* at 301.

Defendant Phyllis Mosley's counsel argued that Justice Antonio Scalia would not have had to dissent in *Dunn* if the third factor were not important.  Actually, Justice Scalia concurred in the decision, but argued as to that factor that the real use of the property, not the officers' perception was the significant point.  *Dunn, supra*, at 305.  This Court agrees with that analysis and notes the factor initially listed in *Dunn* was described as the "nature

of the uses" – not as the officers' perception of the nature of the uses.  *Id.* at 301.

In the initial Report and Recommendation, this Court found that the officers reasonably believed when they approached the trailer that someone might live there.  (*See* Doc. # 45 at 9.)  The Eleventh Circuit held in *United States v. Hatch*, 931 F.2d 1478, 1481-82 (11th Cir.), *cert. denied*, 502 U.S. 883 (1991), that the central question is whether the area in question is "so intimately tied to the house itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection."   As discussed in the original Report and Recommendation, the searched trailer was not Defendants' residence.   Rather, Defendants resided in a trailer "next door."  (Doc. #45 at 8-10.)  In this case, there was no indication that the searched trailer was within the curtilage of Defendant's residence next door.  A defendant bears the burden of proving facts that demonstrate the reasonableness of his expectation of privacy in a searched area.  *United States v. Miravalles*, 280 F.3d 1328, 1332-33 (11th Cir. 2002).

Counsel also argued that *Fixel v. Wainwright,* 492 F.2d 480 (5th Cir. 1974), cited in the Report (Doc. # 45 at 15-16), should govern this case.  In *Fixel,* however, the yard in question belonged to the residence in which the defendant resided.  Our facts are clearly distinguishable.

Defendants have not shown an expectation of privacy in the yard around the searched trailer.

### *Conclusion*

Although the defendants have expanded the scope of inquiry originally requested by the District Court, the additional argument and authority presented did not alter the original conclusion of the undersigned that the motions to suppress should be denied. Upon further review of the record as a whole, the undersigned **recommends** the motions to suppress (Docs. #20 & #21) be **DENIED**.

**DONE AND ENTERED** at Jacksonville, Florida this 8th day of April, 2005.

*Thomas E. Morris*

**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to:
U.S. Atty.  (Moody)
Lester Makofka
William M. Kent
Hon. Timothy J. Corrigan