**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA,

vs.  Case No.   3:04-cr-296-J-32TEM

RICKY MOSLEY
PHYLLIS S.MOSLEY

### ORDER[1]

This is the last in a series of challenges to the legality of the search of defendants' premises. The parties are now before the Court on Defendants Ricky and Phyllis Mosley's Supplemental Motion to Suppress (Franks Issue). (Doc. 95). On July 5, 2005, the Court heard oral argument. At the conclusion of that hearing, the Court set an evidentiary hearing because of the then recently discovered issue of whether the confidential informant ("CI") qualified as a government agent, thus subjecting the CI's search of defendants' residence to Fourth Amendment protections. The Court held that hearing on August 11, 2005. At its conclusion, the Court requested supplemental briefs, which have been filed by the government and Ricky

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

Mosley.  (Docs. 118 and 120).[2]

**I.    BACKGROUND**

On August 28, 2004, the CI for the Clay County Sheriff's Office ("Sheriff's Office"), who had a previous criminal record, entered the defendants' trailer without defendants' permission and observed a marijuana grow (the "Mosley search").  The CI obtained entry to the trailer with an undisclosed friend who had a key.  (Doc. 117, p. 69).  The CI then informed Deputy Samuel Abrahamsen at the Sheriff's Office about the marijuana grow, who, in turn, informed Detective Randy Harris.  (Id. at p. 7).  Ultimately, this resulted in further investigation and the issuance of a warrant to search the premises by a state judge.

Prior to this incident, the CI had worked with the Sheriff's Office.  In late 2001 or early 2002, the CI "signed up" with the Sheriff's Office as a CI.  (Id. at p. 33).  The Sheriff's Office maintains a logbook cataloguing the individuals hired as CI's and the dates of their service.  (Id. at 9).  While the CI's file remains active with the Sheriff's Office, the logbook apparently shows that the CI has not performed any work for the Sheriff's Office since 2003.  (Id. at 9, 14).  There is no Sheriff's Office procedure for terminating an informant even if the CI is not an active informant or stops working altogether.  (Id. at 14, 23, 31).

In 2003, Detective Harris contacted the CI to use him as an informant to make

---

[2]   Phyllis Mosley moved to adopt Ricky Mosley's brief; the Court granted that motion.  (Docs. 119, 121).

2

controlled buys of prescription narcotics. (Id. at 7, 8). While Detective Harris was in contact with the CI over a two to three week period concerning this potential role, the CI was never utilized. (Id. at 8). Since 2003, Detective Harris had no contact with the CI until Deputy Abrahamsen informed him about the CI's observations in defendants' trailer. (Id. at 8, 9).

Further, since 2001, Deputy Abrahamsen has periodically come into contact with the CI in and around the small, rural community of Keystone Heights, Florida. (Id. at 51-52, 55-56). During this period, the CI provided information concerning individuals who either committed thefts or burglaries in the area, and also informed Deputy Abrahamsen as to the whereabouts of individuals wanted on felony arrest warrants. (Id. at 51). The CI, however, had never before provided information obtained as a result of illegal activity by the CI. (Id. at 60, 61). Deputy Abrahamsen also testified that, during this period, he came into contact with the CI on approximately fifteen to eighteen occasions, but that this often occurred while Deputy Abrahamsen was off duty. (Id. at 36, 37, 52). Due to the small size of the community, Deputy Abrahamsen inevitably encounters "almost everyone." (Id. at 56, 57). Many of these encounters with the CI were informal and resulted in simple pleasantries, rather than an exchange of informant-related information. (Id. at 56). There were times, however, when Deputy Abrahamsen exchanged information with the CI on a law enforcement/ confidential informant basis. (Id. at 56, 57).

Neither Detective Harris nor Deputy Abrahamsen instructed the CI to go into

3

defendants' trailer, nor had they discussed the defendants with the CI in any fashion. (Id. at 10, 34, 35).  The CI did not provide the information about defendants because he was working off any past or prospective charges.  (Id. at 38).  Prior to the Mosley search, the Sheriff's Office had never paid the CI for informant work, other than possibly expunging a traffic citation in 2001.  (Id. at pp. 13-15, 18, 37-38, 63-64).  The CI, however, was paid $100 for his services relating to the Mosley search, but this payment was made after the search warrant was executed.  (Id. at 14, 15).  Further, the Sheriff's Office did not reprimand or charge the CI for his unlawful entry into defendants' trailer. (Doc. 118 at p. 2).

**II.     DISCUSSION**

If the CI's search of the defendants' trailer without defendants' permission led to information which, in turn, led to the issuance of a search warrant, the Fourth Amendment may be implicated.  However, a search by a private person such as the CI does not implicate the Fourth Amendment unless he acts as an instrument or agent of the government.  United States v. Ford, 765 F.2d 1088, 1090 (11th Cir. 1985).  "Whether a private party should be deemed an agent or instrument of the Government for Fourth Amendment purposes necessarily turns on the degree of the Government's participation in the private party's activities, ... a question that can only be resolved 'in light of all the circumstances[.]'"  Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 614 (1989) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 487 (1971)).  To be considered a government agent for Fourth Amendment purposes,

there are two critical factors: (1) whether the government knew of and acquiesced in the intrusive conduct; and (2) whether the private actor's purpose was to assist law enforcement efforts rather than further his or her own ends. United States v. Steiger, 318 F.3d 1039, 1045 (11th Cir. 2003) (citations omitted); United States v. Jarrett, 338 F.3d 339, 345 (4th Cir. 2003); United States v. Malbrough, 922 F.2d 458, 462 (8th Cir. 1990); United States v. Walther, 652 F.2d 788, 792 (9th Cir. 1981). "Other considerations are whether the informant performed the search at the request of the government and whether the government offered a reward." Malbrough, 922 F.2d at 462 (citations omitted).

The parties agree and the case law suggests this test is conjunctive. (Doc. 114, p. 17-18, 30-31). In analyzing the first factor, courts have required evidence of more than mere knowledge and passive acquiescence by the government before imputing agency status to a confidential informant. See Jarrett, 338 F.3d at 347; see also United States v. Smythe, 84 F.3d 1240, 1242-43 (10th Cir. 1996)("[K]nowledge and acquiescence ... encompass the requirement that the government must also affirmatively encourage, initiate or instigate the private action"); Walther, 652 F.2d at 792 ("Mere governmental authorization of a particular type of private search in the absence of more active participation or encouragement is similarly insufficient to require the application of fourth amendment standards").

There is no evidence that the Sheriff's Office requested the CI to enter defendants' residence, or even knew about it beforehand. The more difficult inquiry

is whether the Sheriff's Office implicitly encouraged the CI to search defendants' trailer. The government posits that the Sheriff's Office's lack of knowledge concerning the CI's search militates heavily against any potential agency status, and that the circumstances show the CI had no agency relationship with the Sheriff's Office vis-a-vis this particular conduct, thus rendering this a private search outside of Fourth Amendment protections. Defendants' position is the totality of the circumstances, namely the Sheriff's Office signing of the CI to an informant agreement in 2003 which was never terminated, and that the CI had some form of an ongoing relationship with Deputy Abrahamsen since 2001, illustrate that the Sheriff's Office implicitly encouraged the CI's action, thus rendering him a government agent under Steiger.

In support of their position, defendants rely heavily on the Ninth Circuit's decision in Walther. There, an airline employee, Rivard, found a suspicious parcel that was shipped as a "Speed Pak." Walther, 652 F.2d at 790. Rivard opened the package and found cocaine. Id. After the discovery, Rivard contacted the DEA, and an arrest ensued. Id. The disclosure of the contents of this package was not Rivard's first contact with the DEA. Id. In fact, between 1973 and 1977, Rivard provided informant-related information to the DEA on eleven occasions, for which he received payments ranging from $25 to $250. Id.

The issue was whether Rivard acted as a government agent when he opened the Speed Pak and notified DEA agents, thus imputing Fourth Amendment protections to the search. Id. at 791. In affirming the district court's suppression of

6

the evidence, the court held that while the DEA had no prior knowledge of the particular search at issue, it encouraged Rivard to engage in this type of behavior. Id. at 793.  The Court, however, emphasized the "narrowness" of its holding and noted that it was based upon the district court's discrete findings that Rivard's contact with the DEA was "extensive" and that he was motivated by payment to perform such inspections.  Id.

This case is distinguishable from Walther.  While the CI was listed by the Sheriff's Office as a confidential informant, he was enlisted by Detective Harris a year prior to the Mosley search and never performed any informant work for him. Assuming, *arguendo*, the Sheriff's Office cleared a traffic ticket[3] two or three years prior to the Mosley search because of information the CI provided to Deputy Abrahamsen, this is too attenuated and, standing alone, insufficient to create an expectation of payment for the Mosley information.  (Doc. 117, pp. 37-38, 63-64).

Further, defendants' argument that the Sheriff's Office acquiesced to the search because it paid the CI is likewise unpersuasive.  The $100 payment, which was the first payment ever by the Sheriff's Office to the CI, occurred after the search.  This is in stark contrast to Walther, where the informant was paid eleven previous times for informant work and the court found he had developed an expectation of recompense for his efforts.

---

[3]   The record is not clear whether the Sheriff's Office cleared a traffic ticket more than two years prior to the Mosley search in exchange for some other information.

7

Defendants also point to Deputy Abrahamsen's encounters with the CI numbering approximately fifteen to eighteen from 2001 to the present as evidence of the agency relationship. While this fact may ordinarily militate toward an agency finding, it was commonplace for Deputy Abrahamsen to encounter "almost everyone", including the CI, in the Keystone Heights area due to its small and rural nature. (Id. at 56). Many of the encounters with the CI resulted only in casual pleasantries, while others involved information exchange concerning property crimes in the area or the whereabouts of individuals who had outstanding arrest warrants. (Id. at 51). Deputy Abrahamsen never paid the CI for information provided and never received information concerning a marijuana grow or other drug related activity. Finally, there is no evidence that the CI performed work for other Sheriff's Office deputies or detectives.

Based on the record before the Court and the totality of the circumstances, there is insufficient evidence to show that the CI acted as a government agent in performing the search of defendants' trailer. Because defendants did not establish the first factor of the conjunctive test, it is unnecessary to analyze the second factor. This issue, like other Fourth Amendment issues previously litigated in this case, creates a close call; the Court nevertheless concludes that the search was a private search and thus outside of Fourth Amendment protections. While the Court strongly questions the Sheriff's Office's decision to reward, rather than punish, the CI for his unlawful entry into defendants' premises, this does not affect the Fourth Amendment

analysis vis-a-vis these defendants.  Accordingly, it is hereby **ORDERED:**

1.  Defendants' Supplemental Motion to Suppress (<u>Franks</u> Issue) (Doc. 95) is **DENIED.**  The Court further finds there has not been a sufficient evidentiary showing concerning the <u>Franks</u> issue originally raised in the Supplemental Motion to Suppress (Doc. 95).  The Motion is likewise **DENIED** on those grounds.

2. Defendants' Ore Tenus Motion for Reconsideration of the Order denying the Motions to Suppress (Docs. 20, 21), made at the conclusion of the August 11, 2005 hearing is **DENIED.**

3.   Assuming no Speedy Trial Act issues are brought to the Court's attention, this case will be set for a status conference on **November 21, 2005 at 4:00 p.m.**, and trial term beginning **December 5, 2005.**

**DONE AND ORDERED** at Jacksonville, Florida this 25th day of October, 2005.

*[signature]*
**TIMOTHY J. CORRIGAN**
United States District Judge

t.
Copies to: counsel of record
            Honorable Thomas E. Morris
            United States Magistrate Judge